UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH HENDERSON, #705169,

        Plaintiff,

v.

SCOTT OLSEN and MATTHEW MANN,

        Defendants.
_____/

Case No. 2:20-cv-00252

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Sgt. Matthew Mann's motion for summary judgment. (ECF No. 20.)

Plaintiff — state prisoner Kenneth Henderson — filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 28, 2020. (ECF No. 1.) In his verified complaint, Henderson asserts that employees of the Alger Correctional Facility (LMF) in Munising, Michigan retaliated against him in violation of his First Amendment rights. (*Id.*) Specifically, Henderson states that Sgt. Mann acted in concert with CO Scott Olsen to keep Henderson in segregation after Olsen falsified a misconduct ticket. (*Id.*, PageID.7.) Henderson claims that these actions were in retaliation for his request for a grievance after Olsen made unprofessional comments on July 1, 2020. (*Id.*, PageID.8.)

Mann now moves for summary judgment, asserting that Henderson did not properly exhaust his administrative remedies. (ECF No. 20.) More specifically, Mann argues that although Henderson named both Olsen and Mann in his Step I grievance, he failed to set forth specific allegations against Mann. As such, the Step I grievance focused only on Olsen's conduct. (ECF No. 21, PageID.83.) In response, Henderson argues that he complied with Michigan Department of Corrections (MDOC) policy by including the dates, times, places, and names of all involved in the incident, and therefore properly exhausted his claims. (ECF No. 26, PageID.115.) Mann replied, adding that Henderson failed to raise the Step I respondent's failure to consider Mann during the grievance process. (ECF No. 27, PageID.124-126.)

The undersigned respectfully recommends that the Court deny Mann's motion for summary judgment because he has not shown that he is entitled to judgment based on Henderson's failure to exhaust. If the Court accepts this recommendation, all of Henderson's claims against Olsen and Mann will remain. The undersigned notes that Mann's exhaustion argument may still be resolved in a bench trial or evidentiary hearing. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

## II. Factual Allegations

Henderson states that on July 1, 2020, CO Olsen called him to the officers' station and, unprovoked, made degrading remarks towards him. (ECF No. 1.) While the rest of Henderson's housing unit wing was called for dinner, Olsen ordered Henderson back to his cell to eat his meal. (*Id.*) Henderson requested a

2

grievance, and informed Olsen that he would be filing a grievance against him for his demeaning comments and behavior. (*Id*.) Olsen allegedly responded by claiming he would put Henderson "in the hole" if he complained. (*Id*.) Henderson alleges that Olsen then shook down his cell, falsified a misconduct ticket for possession of amphetamine, and sent him to segregation to retaliate against him. (*Id*.) Henderson claims that Sgt. Mann acted in concert with Olsen by reviewing Henderson's misconduct ticket and verifying the evidence of amphetamine. (*Id*.) Henderson states that he was forced to stay in segregation until his misconduct ticket was reviewed because Sgt. Mann verified the evidence. (*Id*.) On July 8, 2020, Henderson was found not guilty of the misconduct ticket. (*Id*.)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

1    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id*.) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id*. at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76,

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different

---

2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedure may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance

forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018)

("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[2] the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) ("This grievance relates to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing . . . .").[3] If the inmate claims to have received a retaliatory Class I

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[3] The undersigned acknowledges that in an unpublished opinion written the same year as *Siggers*, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011). Because published decisions bind this Court, and *Reynolds-Bey*

8

misconduct, he must then file a Request for Rehearing raising the retaliation issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation

---

is not a published decision, the undersigned need not resolve this conflict. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). *Siggers* controls. However, if the MDOC responds to a grievance concerning a retaliatory misconduct ticket on its merits, it waives the enforcement of this procedural rule. *Reed-Bey,* 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

> process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V. Analysis

Sgt. Mann acknowledges that Henderson appealed his grievance LMF-20-08-0894-17A (LMF 0894) through all steps of the grievance process. But Mann says that Henderson nevertheless failed to exhaust his claim against Mann for two reasons: (1) Henderson did not include sufficient allegations against Mann in his grievance (ECF No. 21, PageID.83), and (2) Henderson did not complain that the Step I respondent failed to consider his claim against Mann in his Step II or Step III appeals (ECF No. 27, PageID.126).

The Step I form for grievance LMF 0894 is shown below:

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

P.c P

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I __7/16/2020__   Grievance Identifier: __LMF 2007 0891 17A__

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Kenneth Henderson | 705169 | LMF | S-111 | 07/01/20 | 07/14/20 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? __07/08/20__
If none, explain why.

I requested a hearing officer, to investigate the fraudulent misconduct ticket, and It was on 7/08/20 that the action of the Officers (stated below) were exposed.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

This Grievance is against C/O Olsen, Sgt. Mann and unknow Captain for acting in concert/conspiring against me, By falsifying a misconduct ticket. On 07/01/20 at approximately 3:00pm C/O Olsen begin his daily routine of harassing me, I was called to the officers station, C/O Olsen begin making degrading remarks towards me and for no reason sent me to my cell. At approximately 6:00pm my wing was called for "chow" Officer Olsen again called me to the officers station to harass me. I informed him that I did nothing wrong, he directed me to go to my cell, I requested a Grievance, and informed Officer Olsen that I would be filing a grievance for his unprofessional behavior. Officer Olsen responded, "If you want to cry like a little bitch, I'll have your your ass in the hole so fast". I was forced to eat my dinner in my cell. minutes later Officer Olsen approached my cell again making comments, he shook me down (searched my person) then he shook my cell down (searched my cell) within 30 minutes to an hour after Officer Olsen's search, Officer Henren came to my cell requesting a strip search then out of no where Officer Olsen appear smiling and stated "I got this" I was placed in the shower and stripped Officer Olsen stated "I told your ass, you'll be in the hole today" Officer Olsen lied in a misconduct ticked stating that he used a NIK test and some paper came back positive for amphetamine, this was a lie which lead to my placement in segregation, In addition Sgt. Mann also participated in Officer Olsen's, lie as well as unknown Captain, this was disclosed on 07/08/20.

_Kenneth Henderson_
Grievant's Signature

RESPONSE (Grievant Interviewed?  ☒ Yes  ☐ No   If No, give explanation. If resolved, explain resolution.)

While trying to interview prisoner Henderson 705169, He stated that C/O S. Olsen was degrading him and threatened to put him in the hole several times. I interviewed C/O LeBoeuf and informed him of the allegations that prisoner Henderson had made against C/O Olsen. C/O LeBoeuf stated he did not hear C/O Olsen say anything derogatory or threatening. I interviewed C/O Olsen of the allegation's prisoner Henderson made against him. He stated that prisoner Henderson was strip searched that day and was brought to the hole. Olsen stated prisoner Henderson was mad about going to the hole. S. Olsen also stated I did not say anything threatening nor degrading toward prisoner Henderson. Officer S. Olsen always conducts himself in a professional manner. There is not enough evidence given to support this prisoner's claims. Grievance denied at step one.

| Sgt Sey | 7/20/20 | J.Uey | 7/27/2020 |
|---|---|---|---|
| Respondent's Signature | Date | Reviewer's Signature | Date |
| Sgt Seymour | Sgt | J.NaeVaert | RUM |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

Date Returned to Grievant: __7/28/20__   If resolved at Step I, Grievant sign here. Resolution must be described above.   Grievant's Signature   Date

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

(ECF No. 21-3, PageID.103.)

As acknowledged by Defendants, "proper exhaustion" requires a prisoner to complete the administrative review process in accordance with the agency's policies and procedures. (ECF No. 21, PageID.79.) And the policies and procedures

11

governing the grievance process are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective March 18, 2019).[5]  (ECF No. 21-2.)  In Henderson's Step I grievance, he asserts that Olsen, Mann, and "unknown Captain" acted in concert by falsifying a misconduct ticket, and that Mann helped Olsen lie about the presence of amphetamines in Henderson's cell.[6]  (ECF No. 21-3, PageID.103.)  Henderson's claims against Mann in his grievance and in his complaint are thin.  Nevertheless, Mann fails to point to the portion of Policy Directive 03.02.130 that Henderson failed to comply with.  In addition Henderson asserts in his grievance that Olsen, Mann and an unknown Captain acted in concert with each other to retaliate against Henderson.  A review of the Step I, Step II, and Step III grievance responses reveals that the MDOC considered the grievance on its merits at all steps of the grievance process.  (*Id.*, PageID.100-103.)  As such, even to the extent that Henderson's Step I grievance was defective, the MDOC waived any argument that Henderson failed to exhaust based on a procedural defect.  *Reed-Bey*, 603 F.3d at 325.

---

[5]  The undersigned acknowledges that this is a retaliatory misconduct claim which would ordinarily be exhausted through the misconduct hearing process. However, the MDOC waives its requirement that prisoners exhaust their misconduct-related claims through the misconduct hearing process when it considers a retaliatory-misconduct-related grievance on the merits. *Reed-Bey*, 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

[6]  Henderson also attached the MDOC Defendants' Mediation Statement (ECF No. 26-1) to his response to the motion for summary judgment. The Court did not consider this material as relevant to the analysis set forth in the R&R. Moreover, the mediation statement is not admissible under Fed. R. Evid. 408.

Sgt. Mann further contends that Henderson was responsible for informing the Step I respondent of his oversight in failing to interview Mann. He cites *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012), as support. In *Jones*, the plaintiff's argument that the rejection of his grievance was improper was centered on a kite he did not produce during the grievance process. (*Id.*) The Sixth Circuit concluded that the plaintiff's failure to submit or mention the kite in the grievance process restricted him from using it as an argument for improper rejection in his civil rights action. (*Id.*) *Jones* is easily distinguishable from the case at bar. Unlike Jones, Henderson properly raised all relevant details *during* the grievance process. Henderson's argument is based on his inclusion of Sgt. Mann in his Step I and Step III grievances.

The grievance process is designed in part to give an institution notice and opportunity to resolve a prisoner's complaints internally prior to litigation. *Porter*, 534 U.S. at 525. At Step I of the grievance process, Henderson asserted that Sgt. Mann retaliated against him. Henderson's factual assertions were obviously focused on Olsen's actions. But Henderson mentioned Mann at Steps I and III, and the MDOC did not reject those claims. The Court must view the evidence in the light most favorable to the non-moving party when ruling on a motion for summary judgment. Here, in light of that requirement, the undersigned concludes that Mann is not entitled to summary judgment.

## VI. Recommendation

Mann has not shown that he is entitled to judgment based on Henderson's failure to exhaust. Thus, the undersigned respectfully recommends that the Court deny Mann's motion for summary judgment. As noted above, the Court may still hear evidence on Sgt. Mann's exhaustion argument at a bench trial pursuant to *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

If the Court accepts this recommendation, all of Henderson's claims will remain.

Dated: July 19, 2022                                            /s/ *Maarten Vermaat*
                                                                      MAARTEN VERMAAT
                                                                      U.S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).